## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| KRIS THORNTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-07-S-438-NW |
| | ) | |
| PHILLIP KING, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kris Thornton, asserts a claim, pursuant to 42 U.S.C. § 1983, for violation of his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.[1]  He named as defendants Phillip King, a jailer at the Lauderdale County, Alabama, Detention Center; Jackie Rikard, the administrator of the Lauderdale County Detention Center; and Ronnie Willis, the Sheriff of Lauderdale County.  All defendants are sued in their respective individual capacities.  The case currently is before the court on the joint motion by defendants Rikard and Willis to dismiss plaintiff's claims against them

---

[1]*See* doc. no. 1 (Complaint).  The Eighth Amendment prohibits the cruel and unusual punishment of convicted and sentenced inmates of county jails, while the Fourteenth Amendment protects pretrial detainees.  *See, e.g., Marsh v. Butler County,* 268 F.3d 1014, 1024 n.5 (11th Cir. 2001).  Plaintiff does not specify whether he had been convicted and sentenced at the time of the events alleged in his complaint, or was awaiting trial in the state court system.  This factual distinction is irrelevant at the pleading stage, however, because "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments . . . ."  *Id.*

pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

## PART ONE

### *Allegations of Plaintiff's Complaint*

Plaintiff alleges that, while he was in custody at the Lauderdale County Detention Center on or about March 11, 2005, defendant Phillip King unjustifiably assaulted him by slamming his head against the wall six to eight times, pushing him to the floor, and stomping his head twice.[3]  Plaintiff states that King attacked his head because he knew that plaintiff had undergone brain surgery and was particularly vulnerable to a head injury.[4]  After the assault, plaintiff had to be taken to a hospital emergency room.[5]  He had knots on his head, and his nose and ears bled.[6]

The factual allegations of plaintiff's complaint that implicate Rikard and Willis state, in full, as follows:

13.    After the incident, plaintiff personally complained to defendants Rikard and Willis, who, after reviewing the circumstances, ratified and approved of the above-described actions.

14.    Defendants Rikard and Willis ratified and approved of the conduct of King because his conduct was consistent with de facto jail policy of permitting the excessive and punitive use of force.

---

[2]Doc. no. 8.

[3]Complaint, at ¶¶ 5-10.

[4]*Id.* at ¶ 8.

[5]*Id.* at ¶ 12.

[6]*Id.* at ¶ 11.

15.    Prior to this incident, defendants Rikard and Willis were aware, through use of force reports and similar documents, inmate complaints, jailer complaints, attorney complaints, judicial officer complaints, and personal observation that jailers at the Lauderdale Detention Center regularly used force excessively as a means of punishment and not for legitimate reasons.

16.    In response to known incidents of excessive force, defendants Rikard and Willis regularly failed to appropriately discipline or in any effective manner deal with the involved jailers.  Jailers who used excessive force on inmates were either not disciplined at all or inadequately disciplined.  Clearly excessive uses of force were determined to be justified or simply ignored.

17.    The effect of the responses of Rikard and Willis to known incidents of excessive and punitive use of force on inmates was to permit, encourage, and ratify a pattern and practice of unjustified, unreasonable, excessive, and punitive use of force by jailers.

18.    The conduct of Rikard and Willis effectively made the excessive use of force on inmates a de facto policy in the Lauderdale Detention Center.[7]

Plaintiff asserts that King's actions deprived him "of his rights as a convicted prisoner or pretrial detainee under the Eighth or Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983."[8]  He also states:

20.    The unnecessary and wanton pain and suffering that defendant King inflicted on plaintiff was pursuant to the policies and customs of defendants Rikard and Willis described above.

21.    Intentionally or with deliberate indifference, defendants

---

[7] *Id.* at ¶¶ 13-18.

[8] *Id.* at ¶ 19.

Rikard and Willis permitted, encouraged, and ratified a pattern and practice of unjustified, unreasonable, excessive, and punitive use of force at the jail.[9]

## PART TWO

*Standard of Review Under Federal Rule of Civil Procedure 12(b)(6)*

The Federal Rules of Civil Procedure require only that a complaint contain a "'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* — U.S. — , 127 S. Ct. 1955, 1969 (2007) (citations omitted). These factual allegations need not be detailed, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 256, 286 (1986), and *Sanjuan v. American Bd. of Psychiatry and Neruology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994)) (bracketed alteration in *Twombly*). Thus, although notice pleading may not require that the pleader allege a "specific fact" to cover every element, or allege "with precision" each element of a claim, the

---

[9]*Id.* at ¶¶ 20-21.

complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Center for Choice, Inc*., 253 F.3d 678, 683 (11th Cir. 2001).

When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true, and construe them in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Viewed in this manner, the factual allegations of the complaint "must be enough to raise a right to relief above the speculative level . . . ." *Twombly,* 127 S. Ct. at 1965 (citations omitted). Stated differently, the plaintiff must plead facts sufficient to "nudge[] [his]claims across the line from conceivable to plausible . . . ." *Id.* at 1974.

## PART THREE

### *Heightened Pleading Standard Applicable to § 1983 Claims*

As defendants Willis and Rikard point out, however, the low bar of notice pleading has been raised with respect to claims against an individual governmental official based upon 42 U.S.C. § 1983. *See, e.g., GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998).

> [W]hile Fed. R. Civ. P. 8 allows a plaintiff considerable leeway in framing [his, her, or] its complaint, this circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out [his, her, or] its claim.  Some factual detail in the pleadings is necessary to the adjudication of § 1983 claims.  This is particularly true in cases involving qualified immunity, where we must determine whether a defendant's actions violated a clearly established right.

*Id*. at 1367 (citations omitted).

Plaintiff's argument — that no such heightened pleading standard exists — is without merit.  Plaintiff relies upon the decisions of the United States Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163 (1993), *Crawford-El v. Britton,* 523 U.S. 574 (1998), and *Swierkiewicz v. Sorema,* 534 U.S. 506 (2002), to assert that "a heightened pleading standard for cases involving qualified immunity is not the law."[10]  In *Leatherman*, the Supreme Court held that a court may not impose a pleading requirement that is "more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure" to § 1983 claims asserted against *municipal governmental entities*.  *Leatherman*, 507 U.S. at 164.  The Court instructed federal courts to use the mechanisms of summary judgment and discovery to "weed out unmeritorious claims" against municipalities, and affirmed that notice pleading is all that is required for claims of *municipal*

---

[10]Doc. no. 12 (plaintiff's response to Willis and Rikard's motion to dismiss), at 2.

*liability* under § 1983.  *Id.* at 168.

The *Leatherman* Court specifically declined, however, to extend its holding to claims against *individual governmental officials*.  *See id.* at 166-67 ("We thus have no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials.").  The Court's subsequent decisions in *Crawford-El* and *Swierkiewicz* also did not make that extension.  In *Crawford-El,* for example, the Supreme Court reaffirmed its refusal to "revise established rules that are separate from the qualified immunity defense," including "requiring pleadings of heightened specificity *in cases alleging municipal liability*."  *Crawford-El,* 523 U.S. at 595 (citing *Leatherman,* 507 U.S. at 164-69) (emphasis supplied).  The *Crawford-El* Court did not mention cases involving the personal liability of *individual government officials*.  Further, in *Swierkiewicz,* the Court held in a suit brought under Title VII of the Civil Rights Act of 1967,[11] and the Age Discrimination in Employment Act of 1967,[12] that "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits." *Swierkiewicz,* 534 U.S. at 515.  That holding has no bearing on a claim against an individual government official pursuant to 42 U.S.C. § 1983.

---

[11]*See* 42 U.S.C. § 2000e *et seq.*

[12]*See* 29 U.S.C. § 621 *et seq.*

Thus, because *Leatherman, Crawford-El* and *Swierkiewicz* do not require a contrary result, "the heightened pleading requirement [remains] the law of this circuit" with regard to a plaintiff's § 1983 claims against individual governmental actors. *GJR Investments, Inc.,* 132 F.3d at 168. *See also, e.g., Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir. 2003) ("In examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity."); *Dalrymple v. Reno,* 334 F.3d 991, 996 (11th Cir. 2003) (same); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992) ("[W]e want to use this opportunity to repeat that, 'in an effort to eliminate nonmeritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims, we, and other courts, have tightened the application of Rule 8 to § 1983 cases.'") (quoting *Arnold v. Board of Education of Escambia County*, 880 F.2d 305, 309 (11th Cir. 1989)).[13]

## PART FOUR

### *Viability of Plaintiff's Claim*

---

[13]Plaintiff points out that, "in light of *Leatherman, Crawford-El,* and *Swierkiewicz* virtually all circuits have disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)." Doc. no. 12, at 4 (citing cases from the First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and District of Columbia Circuits). The findings of those other circuit courts of appeal are irrelevant, however, as this court is bound to follow the decisions of the Eleventh Circuit.

Defendants Willis and Rikard argue that plaintiff's claims against them in their respective individual capacities should be dismissed because they are entitled to qualified immunity. The doctrine of qualified immunity protects governmental officials who are sued under 42 U.S.C. § 1983 for money damages in their personal, or individual, capacities, but only so long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, e.g.*, *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001) (same). The Supreme Court has established a two-part test for evaluating whether a defendant is entitled to qualified immunity. The "threshold question" that must be asked by the district court is whether the facts (or, in the context of a motion to dismiss under Rule 12(b)(6), the allegations of the complaint), viewed "in the light most favorable to the party asserting the injury," show that "the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If the threshold question is answered positively, the court will proceed to analyze the second aspect of the two-part inquiry: *i.e.,* "whether the right was clearly established." *Id.*

Willis and Rikard do not argue that plaintiff's allegations about King's conduct are insufficient to support a claim against King for cruel and unusual punishment

under the Eighth or Fourteenth Amendment.[14]   Indeed, the court cannot imagine a clearer example of the cruel and unusual punishment prohibited by the Constitution than the beating described in plaintiff's complaint.[15]   Instead, Willis and Rikard argue that the allegations of plaintiff's complaint are not sufficiently detailed to support a claim against them as King's supervisors.

It is true that neither state nor local governmental supervisors can be held liable under § 1983 on the basis of *respondeat superior*, the doctrine holding an employer or principal liable for an employee's or agent's wrongful acts committed within the scope of the employment or agency.  *See Monell v. Department of Social Services*, 436 U.S. 658, 694 n.58 (1978); *see also Polk County v. Dodson*, 454 U.S. 312, 102 S. Ct. 445, 453 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (*en banc*) (holding that an Alabama Sheriff cannot be held liable under § 1983 on the basis of *respondeat superior*) (citing *Geter v. Wille*, 846 F.2d 1352, 1354 (11th Cir.1988)); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) ("Supervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability.") (quoting *Hardin v. Hayes*, 957 F.2d 845, 849 (11th

---

[14]*See supra* note 1.

[15]The court observes that, perhaps for this reason, King did not join in the other defendants' motion to dismiss.

Cir. 1992)).

> Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Gonzalez,* 325 F.3d at [1234-35]; *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990).  The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."  *Gonzalez,* 325 F.3d at [1234] (quoting *Braddy v. Fla. Dept. of Labor & Employment,* 133 F.3d 797, 802 (11th Cir. 1998)); *Brown,* 906 F.2d at 671.  Alternatively, the causal connection may be established when a supervisor's "'custom or policy . . . result[s] in deliberate indifference to constitutional rights'" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Gonzalez,* 325 F.3d at [1235] (quoting *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991)); *Hartley,* 193 F.3d at 1263; *see also Post v. City of Ft. Lauderdale,* 7 F.3d 1552, 1560-61 (11th Cir. 1993).  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."  *Gonzalez,* 325 F.3d at [1234] (internal quotation marks and citation omitted).

*Cottone v. Jenne,* 326 F.3d 1352, 1360-61 (11th Cir. 2003) (ellipses and some bracketed alterations in original).

In his complaint, plaintiff alleges that Rikard and Willis ratified and approved King's conduct because it was consistent with a *de facto* jail policy permitting the excessive and punitive use of force.  He also claims that Rikard and Willis were aware, from a variety of sources, that jailers regularly engaged in excessive,

-11-

unwarranted uses of force. Even so, Rikard and Willis either did not discipline, or did not adequately discipline, jailers who used excessive force. Sometimes they ignored excessive uses of force, or determined the incidents to be justified. The ineffective responses by Rikard and Willis created a *de facto* jail policy by which excessive and punitive uses of force were permitted, or even encouraged. Plaintiff alleges that King acted pursuant to this policy when he beat plaintiff.

The court finds these allegations sufficient to state a claim for supervisory liability against Rikard and Willis under 42 U.S.C. § 1983, even considering the heightened pleading standard for claims involving the qualified immunity of individual government officials. The court is not persuaded by defendants' argument that plaintiff's allegations are vague and devoid of sufficient factual detail. Specifically, defendants argue that plaintiff failed to provide the names of individuals who have lodged past complaints about excessive uses of force, or the circumstances surrounding those complaints. Defendants cite no authority, however, for the proposition that a plaintiff must plead the details of prior complaints or prior instances of abuse in order to support the causal connection required for imposing supervisor liability. Further, plaintiff represents that information about excessive force complaints in the Lauderdale County Detention Center is not public, and he will not have access to that information without the benefit of formal discovery. Plaintiff

should not be required to plead facts to which he has no access, but are instead in the control of the entity that employs the defendants to his claims.   *See Malone v. Chambers County Board of Commissioners,* 875 F. Supp. 773, 791 (M.D. Ala. 1994).

## PART FIVE

*Conclusion and Orders*

Based on the foregoing, the motion by defendants Jackie Rikard and Ronnie Willis to dismiss plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED.  Rikard and Willis are ORDERED to file an answer to plaintiff's complaint on or before July 5, 2007.  The stay on discovery[16] is lifted, and all parties are ORDERED to proceed with discovery in accordance with the Uniform Initial Order.[17]

DONE this 20th day of June, 2007.

_____
United States District Judge

---

[16]*See* doc. no. 19 (order imposing stay of discovery).

[17]Doc. no. 14.