# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **KRIS THORNTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Civil Action No. CV-07-VEH-438-NW |
| | ) |
| **PHILLIP KING,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Plaintiff, Kris Thornton, asserted a claim, pursuant to 42 U.S.C. § 1983, against defendant Phillip King, a jailer at the Lauderdale County, Alabama, detention center, for violation of his Eighth Amendment right to be free from cruel and unusual punishment.[1]  King was sued in his individual capacity only.

The case proceeded to trial, and on July 10, 2009, the jury rendered a verdict, finding all of the following from the preponderance of the evidence:

> 1.   That defendant King intentionally committed acts that violated Thornton's federal constitutional right not to be subjected to cruel and unusual punishment[;]

---

[1] *See* doc. no. 1 (Complaint). Plaintiff originally named two additional defendants: Jackie Rikard, the administrator of the Lauderdale County detention center, and Ronnie Willis, the Sheriff of Lauderdale County. *Id*. Plaintiff later agreed to the dismissal of his claims against Rikard and Willis. *See* doc. no. 34 (plaintiff's response to defendants' motion for summary judgment), at 1 ("Thornton agrees to the dismissal of his supervisory liability claims against defendants Willis and Rikard.").

> . . . .
>
> 2. That King's acts were the proximate or legal cause of damages sustained by Thornton[;]
>
> . . . .
>
> 3. That Thornton should be awarded damages to compensate for physical as well as emotional pain and suffering[; and]
>
> . . . .
>
> 4. That King acted with malice or reckless indifference to Thornton's federally protected rights and that punitive damages should be assessed against King[.][2]

The jury assessed compensatory damages in the amount of $5,000.00, and punitive damages in the amount $15,000.00.[3] That same day, the court entered a final judgment stating:

> In accordance with the jury verdict for the Plaintiff, **FINAL JUDGMENT** is hereby **ENTERED** in favor of Plaintiff Kris Thornton, and against Defendant Phillip King. Plaintiff shall have of Defendant the sum of $5,000.00 for compensatory damages, and $15,000.00 for punitive damages, plus interest hereafter at the prevailing legal rate per annum until paid in full. Costs are hereby taxed against Defendant.[4]

The case currently is before the court on plaintiff's motion for attorney's fees and expenses.[5]

---

[2] Doc. no. 71 (Special Verdict on Interrogatories), at 1-2.

[3] *Id.* at 2.

[4] Doc. no. 72 (Final Judgment) (emphasis in original).

[5] Doc. no. 73.

## II. LEGAL STANDARD

The most useful starting point for determining attorneys' fees is that "the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "The product of this formula is the 'lodestar,' *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir.1994) (per curiam), which is 'the guiding light of our fee-shifting jurisprudence,' *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)." *Kenny A. ex rel. Winn v. Perdue*, 532 F.3d 1209, 1219 (11th Cir. 2008). Excluded from the lodestar calculation are "hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939 (quoting S. Rep. No. 94-1101, at 6 (1976)).

Following the lodestar determination, the court should then address whether the fee should be adjusted upward or downward and may be guided by the twelve factors described in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)[6] *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87

---

[6]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. This includes the *Johnson* decision. In *Hensley*, the Supreme Court reformulated the calculus for computing a reasonable fee, but specifically "acknowledged that district courts may continue to consider the twelve factors outlined by the former Fifth Circuit in *Johnson*." *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 n.1 (11th Cir. 2006) (citing *Hensley*, 461 U.S. at 434 n.9).

(1989), which include the "important factor" of the "degree of the plaintiff's success in the suit." *Ass'n of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (citing *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1940). "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the [partial or] limited success." *Hensley*, 461U.S. at 436–37, 103 S. Ct. at 1941. However, "[t]he Supreme Court has instructed us that there is a 'strong presumption' that the lodestar figure, without any adjustment, is the reasonable fee award." *Perdue*, 532 F.3d at 1220 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

"The abuse of discretion standard applies to the district court's determination of the number of compensable billable hours, the hourly rate at which plaintiffs' counsel is compensated, the award of costs and expenses, and the enhancement decision." *Perdue*, 532 F.3d at 1218 (citing *ACLU of Ga. v. Barnes*, 168 F.3d 423, 439 (11th Cir.1999); *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1248-49 (11th Cir.1991)). "In applying the abuse of discretion standard, we keep in mind that '[w]hen a district court has discretion, there are usually a range of choices it may make and still be affirmed; there is not only one right choice for the court to make.'"

*Perdue*, 532 F.3d at 1218 (quoting *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1298 (11th Cir.2002); *McMahan v. Toto*, 256 F.3d 1120, 1128 (11th Cir.2001)).

**III.    ANALYSIS**

In accordance with the legal framework set forth above, the Court first looks to the amount of hours reasonably expended and then turns to the reasonable hourly rate.  Following this lodestar determination, the Court will then determine whether an upward or downward adjustment is necessary and arrives at the final attorneys' fees to be awarded.  Finally, the Court determines the type and amount of costs to be awarded.

**A.    Prevailing Party Status**

Plaintiff requests an award of attorney's fees and expenses as the prevailing party.  *See* 42 U.S.C. § 1988(b) (providing that, in cases brought pursuant to 42 U.S.C. § 1983, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs).  Specifically, plaintiff requests attorney's fees in the amount of $76,405.00, representing 218.3 hours of work at the rate of $350.00 per hour, and expenses in the amount of $5,599.83, for a total award of $82,004.83.[7]

---

[7]*See* doc. no. 73 (motion for attorney's fees and expenses).

Defendant does not dispute that plaintiff is entitled to an award of fees and expenses; instead, defendant challenges only the reasonableness of the amounts claimed by plaintiff's counsel. Thus, the court turns to its lodestar analysis.

**B.    Lodestar Analysis**

Plaintiff submitted the declaration of his attorney, Mr. Henry F. Sherrod, III, to support his petition for an award of fees and expenses.[8] Mr. Sherrod stated the following with regard to his membership in professional organizations:

> I am a member of the American Bar Association and its Labor and Employment and Litigation sections. I am a member of the National Employment Lawyers Association and a founding board member and current president of NELA's Alabama affiliate (NELA- Alabama). I am a member of the American Association for Justice and its Employment Rights and Civil Rights sections. I am on the board the ACLU of Alabama and currently serve as its vice president. Finally, I am a member of the National Lawyers Guild Police Accountability Project.[9]

Mr. Sherrod is in private practice in Florence, Alabama, but he handles cases throughout North Alabama.[10] He is "recognized by other attorneys as a specialist in civil rights cases in general and law enforcement misconduct in particular." Approximately sixty to seventy percent of his practice is comprised of civil rights litigation under 42 U.S.C. § 1983. The remainder of his practice is focused on

---

[8]Doc. no. 73, at Exhibit 1 (Declaration of Henry F. Sherrod, III).
[9]*Id.* at ¶ 3.
[10]*Id.* at ¶ 5.

representing plaintiffs in employment law cases.[11] He has been practicing law since 1990, and he has practiced within his current specialization for approximately fifteen years, during which he has

> tried multiple employment and law enforcement cases to juries; . . . briefed in the Eleventh Circuit over 20 such cases, with most involving oral argument; and . . . been appointed on appeal by the Eleventh Circuit to represent a pro se inmate alleging issues of first impression under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).[12]

Two of his recent cases "resulted in published decisions addressing important issues concerning the legal rights of incarcerated persons." *See Danley v. Allen,* 540 F.3d 1298 (11th Cir. 2008); *Smith v. Allen,* 502 F.3d 1255 (11th Cir. 2007).[13] While Mr. Sherrod currently takes most cases on a contingency basis, when he does bill his time hourly, he charges a rate of $350 per hour.[14] He states that this rate "is well within the range of fees charged by attorneys handling matters of an equivalent complexity and seriousness within the relevant geographical area, which here is the Northern District of Alabama." He is "one of only a few attorneys in the Northern District of Alabama who handles § 1983 cases as a regular part of his or her practice."[15]

---

[11] *Id.* at ¶ 7.
[12] *Id.* at ¶ 8.
[13] *Id.* at ¶ 9.
[14] *Id.* at ¶ 11.
[15] *Id.* at ¶ 12.

Plaintiff also submitted declarations from three other attorneys — Adam Porter, Jeff Bennitt, and David Gespass — all of whom specialize in employment and civil rights litigation within the Northern District of Alabama.[16] Each of these attorneys stated that excessive force cases are "very difficult cases for a plaintiff's attorney to win." Each attorney also stated that "cases involving allegations of law enforcement misconduct, particularly on behalf of convicted inmates lacking permanent injuries, are highly contingent, and the rate of recovery for plaintiffs in this area is substantially lower than for tort cases in general."[17] Furthermore, "[t]here is no readily ascertainable 'market rate' for a plaintiff's attorney in a civil rights case," because "[m]ost civil rights plaintiffs are unable to afford to pay counsel on an hourly basis." Consequently, most litigation is "conducted on a contingency fee basis, with plaintiff's counsel relying heavily upon 42 U.S.C. § 1988 for remuneration."[18] Each attorney also stated that he was "generally familiar with the reputation, background, and experience of Mr. Sherrod."[19] Mr. Porter even stated that he had served as co-counsel along with Mr. Sherrod.[20] Each attorney stated that Mr. Sherrod's abilities

---

[16] *See* doc. no. 73, at Exhibit 7 (Declaration of Adam Porter), Exhibit 8 (Declaration of Jeff Bennitt), and (Exhibit 9 (Declaration of David Gespass).

[17] Porter Declaration, at ¶ 3; Bennitt Declaration, at ¶ 3; Gespass Declaration, at ¶ 3.

[18] Porter Declaration, at ¶ 5; Bennitt Declaration, at ¶ 5; Gespass Declaration, at ¶ 5.

[19] Porter Declaration, at ¶ 7; Bennitt Declaration, at ¶ 7; Gespass Declaration, at ¶ 7.

[20] Porter Declaration, at ¶ 7.

were "at the highest level," and that "an hourly rate of $350 is reasonable for an attorney of [Mr. Sherrod's] reputation, background, and experience in this difficult area of the law."[21]

Despite this evidence, defendant claims that the hourly rate requested by Mr. Sherrod is excessive based upon an evaluation of the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714. Those factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

### A.   Time And Labor Required

Defendant asserts that the number of hours claimed by Mr. Sherrod was unreasonable and unnecessary, but does not provide any further argument, or any citation to authority, to support that assertion. To the contrary, upon review of the

---

[21]Porter Declaration, at ¶ 7; Bennitt Declaration, at ¶ 7; Gespass Declaration, at ¶ 7.

time sheets submitted by Mr. Sherrod, the court finds the number of hours expended to be both reasonable and necessary.

### B. Novelty And Difficulty Of The Questions

Defendant argues that this case was simply a "garden-variety" excessive force case because no experts were retained and few witnesses testified during the trial. As defendant points out, the case boiled down to a "he-said-he-said" dispute between plaintiff and defendant. The court agrees that the complexity of the issues presented in the present case was no greater than average.

### C. Preclusion Of Employment By Plaintiff's Counsel Due To Acceptance Of The Case

Defendant correctly points out that Mr. Sherrod has not presented any evidence (or any argument) that taking this case prevented him from performing other work.

### D. Customary Fee In The Community

The plaintiffs is entitled to have his attorney compensated at a reasonable hourly rate, which is the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (quoting *Norman*, 836 F.2d at 1299). Establishing the market rate is the plaintiff's burden, which must be done by "satisfactory evidence." *Norman*, 836 F.2d at 1299. "Satisfactory evidence" means

"more than the affidavit of the attorney performing the work." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). Defendant seeks to discredit the declarations of Adam Porter, Jeff Bennitt, and David Gespass (all of whom stated that Mr. Sherrod is entitled to an hourly rate of $350.00) because those attorneys practice law in Birmingham, Alabama, not Huntsville, Alabama, where this case was tried, or Florence, Alabama, where Mr. Sherrod practices. The relevant "community" is not Florence or Huntsville, however, but the entire Northern District of Alabama. *See Cullen v. Georgia Dept. of Transportation,* 29 F.3d 1489, 1494 (11th Cir. 1994) ("The rate of attorney's fees is that of the place where the case is filed."); *Carnegie v. Mutual Savings Life Insurance Co.,* No. CV-99-S-3292-NE, 2004 WL 3715446, at *27 (N.D. Ala. Nov. 23, 2004) (holding that the "relevant legal community" for determining attorney's fees was the Northern District of Alabama) (citation omitted). Furthermore, Mr. Sherrod points out — and the court's experience confirms — that few other plaintiffs' attorneys within the Northern District of Alabama have a practice concentrated on civil rights litigation, and none of those attorneys practice in Huntsville or Florence.

### E.   The Amount Involved And The Results Obtained

Defendant points out that plaintiff originally filed suit against three defendants — Ronnie Willis, Jackie Rikard, and Phillip King — but proceeded to trial against King only.  The court does not consider that fact to be significant, because the court could only identify .1 hours of time for which Mr. Sherrod seeks fees relating only to the claims asserted against the defendants who were dismissed.[22,23]  Thus, only the results of plaintiff's claims against King are relevant to the attorney's fee determination, although the court will deduct .1 (times the reasonable hourly rate) from the attorney's fees awarded.

Defendant also asserts that "[t]he significance of the overall result as a function of the total reasonable hours must be addressed."[24]  Indeed, "[t]he most critical factor in determining the award of attorney's fees is the degree of success that the party

---

[22]The court found the following entry that appears to relate <u>solely</u> to plaintiff's supervisory liability claims against dismissed defendants Rickard and Willis:

  6/4/07  .1   receipt and review of order on defendants' motion to stay discovery.

As noted in footnote 1, *supra*, the plaintiff agreed, in his response to defendants' motion for summary judgment, that his claims against Rickard and Willis should be dismissed.  The motion to stay discovery was filed only by Rickard and Willis.

[23]Defendant does not point to any hours which he claims related <u>solely</u> to plaintiff's dismissed claims.

[24]Doc. no. 78, at 5.  The discussion on this point subsumes defendant's argument that an *additional* reduction to the "lodestar" fee amount is warranted due to the limited success plaintiff obtained.  The court has made all necessary reductions as a function of the hourly rate.  There is no need to further reduce the award.

obtained." *Mills v. Freeman*, 118 F.3d 727, 733 (11th Cir. 1997), *superseded on other grounds as stated in Gray v. Bostic*, 570 F.3d 1321, 1327 (11th Cir. 1997) (citation omitted). According to defendant, Mr. Sherrod's rate should be reduced because, at trial, Mr. Sherrod requested $100,000.00 to $200,000.00 in compensatory damages, plus three times that amount in punitive damages, but plaintiff received a jury award of only $20,000.00, approximately two and one-half to five percent of the requested amount.

It is true that a court can make a downward adjustment to a fee award to reflect an attorney's limited success. *See Hensley*, 461 U.S. at 440 ("[W]here the plaintiff has achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."); *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive."). Even so, the Eleventh Circuit has cautioned that it is often improper to make "the amount of attorneys' fees recovered . . . a strict proportion of the amount of damages that the plaintiff recovered." *Powell v. Carey International, Inc.*, 547 F. Supp. 2d 1281, 1297 (S.D. Fla. 2008) (citing *Andrews v. United States*, 122 F.3d 1367, 1376 (11th Cir. 1997)). The Supreme Court has held that "Congress has determined that 'the public as a whole has an interest in the vindication of the rights

conferred by the statutes enumerated in § 1988, over and above the value of a civil rights remedy to a particular plaintiff . . . .'" *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (quoting *Hensley*, 461 U.S. at 444, n. 4). Tying the amount of fees too tightly to the amount of damages recovered is dangerous because it ignores the non-financial side of a victory, and eschews the important societal interests that are vindicated when plaintiffs prevail in civil rights actions against lawbreakers acting under color of state law.

Thus, while the court finds a downward adjustment to be appropriate in order to reflect plaintiff's limited success, the reduction need not be so substantial as to reflect the percentage of the award plaintiff received in relation to the amount plaintiff's attorney demanded at trial.

### F.   Talents, Experience, Reputation, And Ability Of The Attorney

Defendant argues that this element should be weighed against Mr. Sherrod because he "represented during the pretrial conference that a primary motivation for advancing this case to trial was to bolster his own personal trial experience."[25] According to defendant, if Mr. Sherrod had "been less interested in bolstering his trial experience, there is a much greater likelihood that this case would have been resolved

---

[25] *See* doc. no. 49 (order denying motion to continue).

without a trial, and thus, without this argument about attorney's fees."[26]  Defendant does not otherwise dispute the talents, experience, reputation, or ability of plaintiff's counsel.

The court does not agree that Mr. Sherrod's statement about his desire for trial experience is relevant to the amount of fees he should receive.  Mr. Sherrod's decision to advance the case to trial resulted in his client receiving a jury award that was four times higher than the latest settlement offer he had received from defendant.  Thus, plaintiff was in no way adversely affected by Mr. Sherrod's desire for trial experience.  Furthermore, defendant has offered no evidence to dispute the assertions of attorneys Adam Porter, Jeff Bennitt, and David Gespass that Mr. Sherrod's legal skills are "at the highest level."  The court's own experience with Mr. Sherrod confirms those assertions.

### G.    The Undesirability Of The Case

There is no evidence that Mr. Sherrod did find, or should have found, this case to be "undesirable," at least not subjectively.  Mr. Sherrod is a specialist in plaintiffs' civil rights litigation, and he was eager to gain the trial experience this case offered.  The court acknowledges, however, that there are significant disadvantages for an attorney pursuing civil rights litigation against law enforcement officers, including

---

[26]Doc. no. 78 (defendant's response to plaintiff's motion for attorney's fees), at 6.

bias against the plaintiff and the resulting risk of little or no recovery. The court will duly consider these "undesirable" factors in determining the appropriate amount of the fee award.

### H.    Awards In Similar Cases

Defendant again asserts that the hourly rate claimed by Mr. Sherrod exceeds "the customary fee for civil rights attorneys in the Northern District" of Alabama, and[27] that Mr. Sherrod should be limited to a rate of $150.00 per hour. In support of that assertion, defendant cites *Duckworth v. Whisenant,* 97 F.3d 1393 (11th Cir. 1996), in which the court awarded a $200.00-per-hour rate to an attorney who had tried at least a dozen civil rights cases, and a $150.00-per-hour rate to an attorney who had just tried his first excessive force case, and *Miller v. Kenworth of Dothan, Inc.,* 117 F. Supp. 2d 1247 (M.D. Ala. 2000), in which the court awarded a $175.00-per-hour rate to an attorney who had handled more than forty civil rights cases over an eight-year period. Those cases were decided thirteen and nine years ago, respectively. A significant increase in billable rates during that time period should be expected and the court's own experience is that billable rates have significantly increased generally during that time period.

Without any case law authority to support a reduction to a $150.00 hourly rate,

---

[27]Doc. no. 78, at 7.

Case 3:07-cv-00438-VEH    Document 82    Filed 09/04/2009    Page 17 of 20

defendant relies exclusively on the declaration of his own attorney, Daryl L. Masters.[28] Mr. Masters states:

> I am familiar with the rates charged by our firm for legal services provided by our lawyers and, [sic] I am generally familiar with the rates charged by other lawyers and firms in civil rights cases. I am also generally familiar with hourly rates charged by senior federal court litigators through information obtained in other fee-shifting litigation. In addition, I have spoken informally on a number of occasions with attorneys who have extensive practices in federal court, both for plaintiffs and defendants, to ascertain their opinions with respect to hourly rates customarily charged in the Florence and Huntsville, Alabama markets.
>
> I am not aware of any lawyer practicing in the Huntsville or Florence areas who regularly commands in the marketplace a $350.00 hourly rate, even for complex federal litigation. In my opinion, as more fully explained below, while a few of the most experienced federal litigators in this area might command as much as $200.00 per hour, and on occasion slightly more, most could expect to be able to charge a fee-paying client, in the increasingly competitive marketplace, a fee in the range of $115 to $165 per hour.[29]

Mr. Masters further states that his firm charges an hourly rate of $150.00 for senior partners with more than twenty years' experience, and $140.00 for more junior partners.[30]

Defendant again incorrectly assumes that the relevant market is limited to Huntsville and Florence, Alabama. Furthermore, defendant's flawed and conclusory

---

[28]*See* Exhibit 1 to doc. no. 78 (Declaration of Daryl L. Masters).

[29]*Id.* at ¶¶ 2-3.

[30]*Id.* at ¶¶ 4-5.

statement that no other attorneys in the relevant market charge as much as $350.00 per hour is refuted by the declarations from other attorneys that were submitted by Mr. Sherrod. Finally, Mr. Masters' own low billing rate is of little relevance to the rate Mr. Sherrod should be allowed to charge. In *Brooks v. Georgia State Bd. of Elections,* 997 F.2d 857 (11th Cir. 1993), the Eleventh Circuit noted that "the hourly rate paid to defense counsel [is] of questionable relevance in setting the rate for plaintiffs' counsel." *Id.* at 869 (citing *Johnson v. Univ. College of Univ. of Alabama in Birmingham,* 706 F.2d 1205, 1208 (11th Cir. 1983)). This is because, when private attorneys represent governmental entities, they "often charge lower rates to the government because of counterbalancing benefits such as repeat business." *Brooks,* 997 F.2d at 869.

### I. Balance Of Factors

Considering the evidence of Mr. Sherrod's experience and talent, the risk inherent in litigating civil rights lawsuits on behalf of plaintiffs, the reasonable number of hours expended by Mr. Sherrod in pursuing this litigation, the evidence of the rates customarily charged by other attorneys in the relevant legal community, and the societal significance of vindication of civil rights, the court finds that Mr. Sherrod is entitled to a much higher hourly rate than the $150.00 suggested by defendant. This conclusion is bolstered by the fact that defendant failed to produce a sworn

statement from any attorney — other than the flawed and unpersuasive statement of Mr. Masters — that Mr. Sherrod's fee should be anything other than $350.00 per hour.

On the other hand, considering the relatively unremarkable level of difficulty in this case, as well as the somewhat limited success Mr. Sherrod achieved in comparison to the amount he demanded from the jury, *some* reduction of the $350.00 hourly rate requested by Mr. Sherrod is warranted. Upon consideration of the balance of *all* the *Johnson* factors discussed by the parties in their briefs,[31] the court concludes that an hourly rate of $300 would fairly and reasonably compensate Mr. Sherrod for his representation of plaintiff in this litigation. Further, the court will reduce the number of hours for which Mr. Sherrod is compensated from the 218.3 he sought to 218.2, as explained in the text related to footnote 22, *supra*.

Defendant did not dispute the amount of expenses claimed by plaintiff and, upon review of the itemization of those expenses, the court determines them to be reasonable and necessary.

---

[31]Neither party separately addressed the third, sixth, seventh, or eleventh *Johnson* factors — *i.e.,* the skill required to perform the legal service properly, whether the fee is fixed or contingent, the time limitations imposed by the client or the circumstances, and the nature and length of the professional relationship with the client. Even so, the court concludes that it has sufficient information to determine an appropriate fee award in this case.

## IV. CONCLUSION AND ORDER

For the reasons stated above, the court concludes that Plaintiff's Motion for Attorney's Fees and Expenses is due to be, and hereby is, **GRANTED**. Plaintiff is hereby awarded attorney's fees in the amount of $65,460.00, representing 218.2 hours of legal work performed at the rate of $300.00 per hour. Further, the court hereby awards plaintiff the sum of $5,599.83 for expenses incurred.

**DONE** and **ORDERED** this the 4th day of September, 2009.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge